Dear Marshal Mouton:
Your question to this office is restated as in your letter:
 Shall the City of Opelousas bear the cost of the expenses and salaries for the Opelousas City and Ward I Marshal's Office when 25% of the population of Ward I live outside of the City limits? Shall the burden be borne by both the City of Opelousas and the Parish Government? And if so, what percentage shall be borne by each entity?
We first cite applicable law pertaining to the funding of the Opelousas' Marshal's office. R.S. 13:1883, 13:1881 13:1889, and 13:2105.1
pertinently provide:
§ 1883. Compensation of marshal
 A. The marshals of the city courts enumerated in this Subsection shall receive as compensation for their services the following minimum salaries, payable monthly on their own warrant and which, except as otherwise indicated, shall be paid in equal proportions by the respective governing authorities of the city and parish where the court is located:
 * * * * * C. Except as provided in R.S. 13:2071, in all other cases the marshal's salary shall be paid by the governing body of the city and parish where the court is located, in such amounts as they may determine, except that where the population of the territorial jurisdiction of the court is more than 10,000 inhabitants, the marshal shall receive a minimum annual salary of $3,600 payable monthly in equal proportions by the governing authorities of the city and parish on the warrant of the marshal.
 * * * * *
§ 1881. General powers and duties of marshals; deputy marshals
 B. The marshal may appoint one or more deputy marshal having the same powers and authority as the Marshal, but the Marshal shall be responsible for their actions. The compensation of the deputy marshals shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located.
 * * * * *
§ 1889. Court room and offices
A. The city where the court is situated shall furnish a suitable city court room and suitable offices for the judge, clerk, and marshal. It shall also furnish adequate fireproof vaults or other filing equipment for the preservation of the records of the court.
B. The expenses of operation and maintenance of the court room and offices shall be borne by the city, or may be apportioned between the city and parish as the respective governing authorities may determine.
C. Provided however, the expenses and maintenance of the courtroom and offices of the city court of Morgan City shall be borne by the governing authorities of the city of Morgan City and the parish of St. Mary in a proportion which the population of the city of Morgan City within Ward 6 of St. Mary Parish and which the population of the unincorporated portions of Ward 6 of St. Mary Parish bear to the total population of Ward 6 of St. Mary Parish as determined and adjusted from time to time by the decennial United States census.
 * * * * * § 2105.1 Opelousas; marshal; fees in criminal matters; qualifications
 A. The marshal of the city of Opelousas shall collect a fee of twelve dollars for the service of subpoenas in criminal matters when required to do so.
 B. The sums of monies collected under the provisions of Subsection A shall be deposited in the marshal's general fund to supplement the operational expenses of the marshal's office. The expenditure of the funds shall be at the sole discretion of the marshal of the court. All funds shall be subject to and included in the marshal's annual audit. A copy of the audit shall be filed with the legislative auditor who shall make it available for public inspection.
 C. The assessment and disposition of any funds to this Section shall not affect the responsibilities of the city and parish governing authorities provided by law for the financing of the marshal's office of the Opelousas City Court.
 D. The educational requirements set forth in R.S. 13:1880(A)(1) shall not apply to the marshal of the city of Opelousas until January 1, 2003.
A review of the relevant statutes indicates that the city and the parish are equally responsible for funding the salary of the marshal. Compensation of any deputy marshals may be paid by either the city, or the parish, or both.
The responsibility for providing suitable offices for the marshal rests with the city. The city is also primarily responsible for the expenses incurred in the operation of the marshal's office. With respect to percentages, while the city is 100% responsible for funding the expenses of the marshal's office, the law permits the parish to fund part of these expenses. An exact allocation of expenses is not provided by statute, but instead remains to be "apportioned between the city and parish as the respective governing authorities may determine."
Finally, note that the marshal's salary must be at minimum $3,600 annually if the territorial jurisdiction exceeds 10,000 inhabitants.[1]
The parish and city remain equally responsible in this instance.
At present, the responsibilities for salaries and expenses of the marshal's office are not allocated to the parish and city proportionally by population. Such an allocation would require legislative amendment to the current law.
Should you have other questions in which we may provides assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
DATE RELEASED: January 23, 2003
[1] R.S. 13:2610(A)(1) provides for the territorial jurisdiction of the Cirty Court Ward for Opelousas and states:
§ 2610 St. Landry Parish; Territorial jurisdiction
A. There is hereby established, effective January 1, 1997, justice of the peace court territorial jurisdiction and boundaries in St. Landry Parish as follows:
(1) First Justice or City Court Ward (Opelousas):
Beginning at the point where U.S. Highway 167 intersects Bayou Grand Louis (also a line between St. Landry and Evangeline Parishes); thence following the meanders of Bayou Grand Louis in a south and southwesterly direction to the range line between T5S, R2E, and T5S, R3E; thence following the range line south a distance of approximately five (5) miles to the intersection with Parish Road 1-115-3; thence east on Parish Road 1-115-3 to its intersection with Parish Road 1-115-4; thence following Parish Road 1-115-4 in a southerly and easterly direction to its intersection with Parish Road 1-115-5; thence following Parish Road 1-115-5 in a southerly and easterly direction to its intersection with LA. Hwy. 104; thence east on LA. Hwy. 104 to its intersection with West Fork Bayou; thence following West Fork Bayou in a southerly direction to its intersection with Bayou Plaquemine Brule; thence south on Bayou Plaquemine Brule to its intersection with an unimproved road located in Section 22, T6S, R3E; thence south on unimproved road to its intersection with Parish Road 6-176 (1-226); thence south on Parish Road 6-176 (1-226) to its intersection with Hwy 357; thence southwest on Hwy 357 to its intersection with Parish Road 1-245; thence east on Parish Road 1-245 to its intersection with Jeep Trail located in the middle north part of Section 10, T7S, R3E; thence following said Jeep Trail in a southerly direction to its intersection with Drainage Canal located in Section 15, T7S, R3E; thence west on said Drainage Canal to its intersection with Hwy 357; thence south on Hwy 357 to its intersection with Parish Road 6-175; thence east on Parish Road 6-175 to its intersection with 6-177; thence south on Parish Road 6-177 to its intersection with LA. Hwy 178; thence east on LA. Hwy 178 to its intersection with Bayou Bourbeau; thence northerly and easterly along Bayou Bourbeau to its intersection with Jeep Trail located in Section 119, T7S, R4E; thence northerly along said Jeep Trail, continuation to unimproved road, and continuation of Parish Road 1-317 to intersection with LA. Hwy 31; thence south on LA. Hwy 31 to its intersection with Jeep Trail located in Section 123, T6S, R4E; thence north along said Jeep Trail to intersection with Bayou Teche; thence northerly and easterly along Bayou Teche to its intersection with the western corporate limits of the Town of Port Barre; thence following the western corporate limits of the Town of Port Barre to its intersection with Bayou Courtableau; thence northerly along Bayou Courtableau to its intersection with a private road in Section 33, T5S, R5E; thence following said private road in a southerly direction to its intersection with Bayou Toulouse; thence following Bayou Toulouse in a westerly and northerly direction to its intersection with Parish Road 5-10; thence southwesterly on Parish Road 5-10 to its intersection with the high power line located in Section 37, T6S, R4E; thence northwesterly along said power line to its intersection with LA. Hwy 744 (Kennerson Road); thence westerly along LA. Hwy 744 (Kennerson Road) to its intersection with LA. Hwy 182; thence south on LA. Hwy 182 to its intersection with Parish Road 1-10; thence west on Parish Road 1-10 to its intersection with LA. Hwy 749; thence northwesterly on LA. Hwy 749 to its intersection with LA. Hwy 167 (Hwy 10); thence northwesterly on LA. Hwy 167 (Hwy 10) to point of beginning.